IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**    )
                          )
            v.                )       1:05cr42
                          )       **Electronic Filing**
**JAISON CEATRIX THOMPSON**    )

## <u>OPINION</u>

On April 25, 2006, Jaison Ceatrix Thompsom pled guilty to the charge of possession with intent to distribute 5 grams or more of cocaine, in the form commonly known as crack, in violation of Title 21, United States Code, sections 841(a)(1) and 841(b)(1)(B)(iii). He was sentenced on October 11, 2006, to 210 months of imprisonment and 4 years of supervised release. Presently before the court is defendant's motion for reduction of sentence pursuant to Section 404 of the First Step Act of 2018. The government opposes defendant's eligibility for relief under the Act and advocates that the motion should be denied in any event. For the reasons set forth below, the motion will be granted.

The charges against defendant arose out of a traffic stop based on the erroneous belief that defendant was another individual wanted for a parole violation. Defendant provided a Virginia identification card in the name of Victor Rhodes. The vehicle was owned by another individual. That individual was contacted and gave consent to search the car. That search revealed quantities of crack and powder cocaine, each of which was packaged in numerous small units and located in close proximity to the driver's seat. The government's factual basis proffered at the change of plea hearing indicated that 37.5 grams of crack and 24.7 grams of powder cocaine had been seized. Defendant did not dispute the government's factual basis at the time it was given. The Presentence Investigation Report ("PSIR") listed the amounts as 6.2 grams of

crack and 27.4 grams of powder cocaine. Neither party objected to or disputed the amount of crack reported in the PSIR.

The PSIR indicated defendant was subject to a minimum of 5 and a maximum of 40 years of incarceration and at least 4 years of supervised release. Defendant's sentencing range under the United States Sentencing Guidelines was based on his designation as a career offender. The predicate offenses for this designation were a 1994 conviction in the Court of Common Pleas of Allegheny County, Pennsylvania, for aggravated assault based on defendant shooting the victim in the back. He received a 5 to 10 year sentence for this offense. The second predicate offense was a 2002 conviction for possession of a controlled substance with the intent to deliver, for which defendant received a sentence of 2 years of probation.[1] Defendant's designation as a career offender produced a total base offense level of 34 and a Criminal History Category of VI. After a two level adjustment for acceptance of responsibility, an adjusted base offense level of 32 and a criminal history category of VI produced a guidelines sentencing range of 210 to 262 months.[2]

Defendant was sentenced to 210 months and 4 years of supervised release. His sentence and conviction were affirmed on appeal. United States v. Thompson, 285 F. App'x 881 (3d Cir. 2008). His motion under the Fair Sentencing Act of 2010 for a reduced sentence based on the lowering of the guidelines ranges for crack cocaine offenses was denied due to his range being controlled by his career offender status. See, e.g., United States v. Martin, 867 F.3d 428, 431-33 (3d Cir. 2017) (Defendants whose guidelines sentencing range were set by a career offender designation are outside the scope of relief provided by the Fair Sentencing Act of 2010 and the

---

[1] Other criminal history not pertinent to defendant's career offender status included juvenile delinquency proceedings for controlled substances and absconding from a residency facility on two occasions.

[2] On the day of sentencing Judge McLaughlin overruled defendant's objection to the government's refusal to request the third point for acceptance of responsibility.

retroactive application of the downwardly adjusted guidelines ranges for crack cocaine offenses promulgated pursuant to that Act, even if the non-career offender range was referenced in a negotiated plea agreement.).

Defendant moves for a new sentence of time served and 3 years of supervised release under the First Step Act. He contends this Act clearly was intended to make him eligible for such relief. His underlying crack cocaine offense assertedly is a "covered offense" because the statutory penalties for the amount charged in the indictment, 5 grams or more, have been lowered by the Fair Sentencing Act and are now made retroactive by the First Step Act, and his guidelines range under the applicable career offender provisions of U.S.S.G. § 4B1.3 concomitantly has been reduced. In addition, the court imposed a sentence for this covered offense prior to 2010 and he has not received relief under either the Fair Sentencing Act or the First Step Act. Given these grounds, defendant seeks to convince the court to exercise its discretion under the First step Act based on 1) the reduced sentence that could be imposed if he were charged with the same offense today, 2) the fact that he received a sentence at the low end of the guidelines range in 2006, 3) his age at the time of the predicate offenses, 4) his current age as it relates to the statistics on recidivism,[3] and 5) his post-sentencing conduct while incarcerated.[4] Accordingly, defendant requests the court "impose" a reduced sentence at the low end of the guidelines sentencing range as it now exists.

The government challenges defendant's eligibility for relief under the First Step Act and opposes his request for a reduced sentence in any event. It counters that the structure of the First

_____

[3] Defendant currently is 43 years of age and has reached an age of maturity where the likelihood of recidivism declines sharply. National Institute of Justice, Five Things About Deterrence (May 2016), at 2, available at https://www.ncjrs.gov/pdffiles1/nij/247350.pdf ("Even those individuals who commit crimes at the highest rates begin to change their criminal behavior as they age. The data show a steep decline at about age 35.").

[4] This included obtaining a General Equivalency Diploma, completing several finance, computer and job-skill/re-entry courses as well as an institutional discipline-free record of conduct.

Step Act directs the court to focus on the offense conduct and consider how that conduct would be charged under the Fair Sentencing Act's statutory limits and the current, applicable sentencing guidelines. In other words, it maintains that the First Step Act "allows courts to use their own discretion and make a reasonable, if hypothetical, judgment about how the [Act] would have affected a defendant's prosecution and sentence." Government's Brief in Opposition (Doc. No. 114) at 7. And "[i]n Thompson's case, the hypothetical exercise shows that Thompson's sentence would not have changed under the [Act]," and thus his sentence would not and should not be reduced. In this regard the government maintains that "Thompson's statutory and Guidelines ranges would have been identical: both before and after 2010, a career offender with 37.5 grams of crack cocaine would have had a statutory range of five to forty years, a base offense level of 34, and (with a reduction of two levels for acceptance of responsibility) a Guidelines range of 210 to 262 months' imprisonment." Id. His term of supervised release likewise would remain unchanged. Id. Thus, the government posits that under a proper construction of the First Step Act defendant is ineligible for relief.

The government seeks to muster further support for its position from 18 U.S.C. § 3582(c)(1)(B). It argues that this statute's limitations on modifying an existing sentence cabin any exercise of discretion here, where the record shows that defendant possessed with the intent to distribute more than the new threshold of crack cocaine needed to trigger the statutorily mandated 5 year minimum and 40 year maximum limits of incarceration. It posits that the First Step Act places no limits on the type of information a court can consider in evaluating a motion pursuant thereto and the specific facts established by the record, including the actual drug amount, which it claims is "one of the most relevant pieces of information when assessing a defendant's crime." Government's Brief in Opposition (Doc. No. 114) at 9.

Assuming the court agrees with defendant and finds it has discretion to impose a reduced sentence, the government opposes a reduction for the same reasons. It asserts that application of the First Step Act as advocated by defendant would result in sentencing disparities between defendants sentenced before the Fair Sentencing Act of 2010 and those who were sentenced thereafter in that those defendants whose offenses involved more than 28 grams of crack can gain the benefit of resentencing whereas those who were sentenced thereafter cannot. It projects that if defendant were charged and sentenced today, the United States Attorney's Office would pursue charges against defendant for possessing 28 grams or more of crack, thereby triggering the same statutory penalties and the same guidelines sentencing range. And it argues that the sentencing judge could have imposed a lower sentence but chose not to do so. It advocates that given this state of affairs defendant's sentence should not be changed.

Finally, the government contends that because the current review purportedly is limited by § 3582(c)(1)(B), the court may use the amount of crack attributable to defendant in formulating a new sentence without running afoul of the due process limitations established in Apprendi v. New Jersey, 530 U.S. 466 (2000) and Alleyne v. United States, 570 U.S. 299 (2013). In addition, the limitations in a § 3582(c)(1)(B) proceeding supposedly preclude a resentencing. They likewise preclude consideration of the particular circumstances highlighted by defendant, including his limited means and education at the time of the offense, his age at the time of his release and his post-sentencing efforts toward rehabilitation. And from the government's perspective this member of the court should place the same relative emphasis on the seriousness of defendant's past criminal history and recidivism that previously was given by the sentencing judge. Based on these grounds, the government contends that defendant's sentence should not be changed in any event.

The government's position that defendant is ineligible for relief under the First Step Act is erroneous. Defendant's sentence was governed by the Sentencing Reform Act of 1984 and the applicable statutory penalties at the time defendant was sentenced were set by the Anti-Drug Abuse Act of 1986. The Anti-Drug Abuse Act of 1986 set particularly harsh statutorily mandated minimum and maximum sentences for crack cocaine offenses. Using a 100 to 1 ratio for crack verses powder cocaine offenses, the Anti-Drug Abuse Act set a mandatory minimum of 5 and a maximum of 40 years for possession with the intent to distribute 5 grams or more of crack or 500 grams or more of powder and a minimum of 10 years and a maximum of life for 50 grams of crack or 5000 grams of powder. See generally United States v. Pierre, 372 F. Supp.3d 17 (D. R.I. 2019) (Smith, C.J.). In turn, the Sentencing Commission set "the Drug Quantity Table's entire set of crack and powder cocaine offense levels by using the 1986 Drug Act's two (5– and 10–year) minimum amounts as reference points and then extrapolating from those two amounts upward and downward to set proportional offense levels for other drug amounts." Dorsey v. United States, 567 U.S. 260, 267-8 (2012). It did so not because its independent assessment supported the view that such ranges reflected sound sentencing practices or fair sentences for the conduct involved, but because the Commission "believed that doing so was the best way to keep similar drug-trafficking sentences proportional, thereby satisfying the Sentencing Reform Act's basic 'proportionality' objective." Id. at 268 (citing Kimbrough v. United States, 552 U.S. 85, 97 (2007)).

After longstanding and persistent criticism, the Fair Sentencing Act of 2010 sought to ameliorate in part the harsh treatment of crack cocaine offenses and narrow the disparity between crack and powder cocaine offenses. See Dorsey, 567 U.S. at 268 (During the two decades following the Anti-Drug Act, "the [Sentencing] Commission and others in the law enforcement community strongly criticized Congress' decision to set the crack-to-powder mandatory

minimum ratio at 100–to–1.") (collecting authority).  The Act raised the threshold quantities of

cocaine base triggering the enhanced penalties under the Controlled Substances Act.   The

threshold for the 5 to 40 year penalties was raised from 5 to 28 grams and the threshold for the

10 years to life was raised to 280 grams.  Compare 21 U.S.C. §§ 841(b)(1)(A)(ii) & (iii)

841(b)(1)(B)(ii) & (iii) (2009) with Pub. L. 111-220, 124 Stat. 2372, 2372 (2010) § 2, (codified

at 21 U.S.C. §§ 841(b)(1)(A)(ii) & (iii), (b)(1)(B)(ii) & (iii) (2010)).

    The Guidelines were amended with the new statutory penalties created by the Fair

Sentencing Act.  See Dorsey, 567 U.S. at 260.  The base offense levels for various quantities of

crack cocaine were lowered.  See U.S.S.G. § 2D1.1 (2011).  These amendments were given

retroactive effect.  See U.S.S.G. app. C, amend. 759; U.S.S.G. § 1B1.10(c).  As a result, more

than 7,700 inmates received sentence reductions by October 2014.  See U.S. Sentencing

Commission, Final Crack Retroactivity Data Report Fair Sentencing Act at 2-4 (Dec. 2014),

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/retroactivity-analyses/fair-

sentencing-act/Final_USSC_Crack_Retro_Data_Report_FSA.  Thereafter, the Commission then

amended the Drug Quantity Table again, reducing in general the offense levels for all drug

offenses and in doing so further reducing the base offense levels associated with different

quantities of crack cocaine.  See U.S.S.G. app. C, amend. 782 (commonly referenced as the

"Drugs Minus Two" Amendment/motions).

    As previously alluded to, these series of statutory reforms and concomitant amendments

to the guidelines did not provide relief for all offenders who had been sentenced for offenses

involving crack cocaine prior to 2010.  As particularly germane here, the Fair Sentencing Act

and guidelines amendments that followed did not provide relief to those who were designated as

career offenders and whose final offense level was dictated by the maximum statutory penalty

applicable to his or her offense.  See U.S.S.G. § 4B1.1; see also Martin, 867 F.3d at 431.  The

question thus presented here is whether the First Step Act was intended to apply to offenders like defendant who were sentenced prior to 2010 as career offenders based in whole or in part on a crack cocaine drug trafficking offense.

A straightforward interpretation of the statute indicates defendant is within the grant of authority providing this court with the discretion to award relief in the form of a reduced sentence.  Section 404 of the Act states in relevant part:

(a) Definition of Covered Offense. - In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) Defendants Previously Sentenced. - A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) Limitations. - No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act (Public Law 111-220; 124 Stat. 2372), or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.  Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

"Under the plain language of this section, whether an offense is a 'covered offense' is determined by examining the statute that the defendant violated."  United States v. Allen, -- F. Supp.3d --, 2019 WL 1877072, *3 (D. Conn., April 26, 2019) (citing United States v. Davis, 2019 WL 1054554, *3 (W.D. N.Y. Mar. 6, 2019)).  The statutory penalties for the offense of conviction must have been modified by section 2 or 3 of the Fair Sentencing Act.  United States

v. Dodd, 372 F. Supp.3d 795, 796 (S.D. Iowa 2019). And the defendant must have committed the covered offense prior to August 3, 2010. United States v. Copple, 2019 WL 486440, *1 (S.D. Ill. Feb. 7, 2019); United States v. Garrett, 2019 WL, *2 (S.D. Ind., June 25, 2019) ("A 'covered offense' is one whose penalties were modified by the Fair Sentencing Act but was committed prior to August 3, 2010.").

Defendant was convicted of a covered offense. He was charged on April 25, 2006, with possession with intent to distribute 5 grams or more of cocaine base in violation of Title 21, United States Code, sections 841(a)(1) and (b)(1)(B)(iii). He pled guilty to the charge and was sentenced on October 11, 2006. The penalties for this offense subsequently were lowered by the Fair Sentencing Act. The statutory penalties for the charged conduct have been reduced: under the Fair Sentencing Act of 2010 the threshold for the 5 to 40 year penalties at § 841(b)(1)(iii) was raised from 5 to 28 grams. In other words, distributing or possessing with the intent to distribute 5 grams or more cocaine base now, under the Fair Sentencing Act, is punishable by a sentence of up to 20 years. 21 U.S.C. § 841(c). Defendant thus was sentenced for a covered offense as defined by the First Step Act.

In recognizing that defendant currently is serving a sentence for a covered offense, we join the growing majority of courts that have recognized "it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act." Allen, supra at *3 (quoting United States v. Martin, 2019 WL 1558817, *3 (E.D.N.Y. April 10, 2019) and Davis, supra at *2) (collecting additional cases in support); see also Dodd, 372 F. Supp.3d at 797 ("The First Step Act, however, applies to offenses and not conduct."). In doing so we also decline the government's invitation to seize on its perceived ambiguity in the wording of the First Step Act and delve into the defendant's actual relevant conduct for the purpose of determining eligibility. As Chief Judge Smith succinctly stated in United States v. Pierre:

in determining whether a defendant is eligible for relief under § 404 of the First Step Act, the sentencing court should look to whether the offense of conviction was modified by the Fair Sentencing Act of 2010 to determine eligibility; it should refrain from delving into the particulars of the record to determine how this specific defendant committed his or her offense of conviction, and how those facts would have hypothetically affected the charges brought against the defendant under the new statutory regime.

372 F. Supp.3d at 22; accord United States v. Rose, 379 F. Supp.3d 223, 228 (S.D. N.Y. 2019) (Through its formulation of the grammatical structure of § 404(a), Congress made "clear that eligibility is determined by the statute(s) underlying the defendant's conviction and penalty, not the defendant's offense conduct.") (collecting cases); United States v. Boulding, 379 F.Supp.3d 646, 652 (W.D. Mich. 2019) (following Davis and observing that "[q]uantity is simply not part of the statutory test for eligibility under the First Step Act. Eligibility turns entirely on the categorical nature of the prior conviction.").

There are numerous reasons that support this approach. First, under a straightforward reading of the statute, "[i]t is [the specific crack cocaine] offense that was affected by the Fair Sentencing Act, and that offense with which the First Step Act is concerned." Dodd, 372 F. Supp.3d at 798. The government's journey to specific relevant conduct is based on a construction and inferences that go well beyond this central focus of the statute.

Second, although the government's position is plausible, the rule of lenity provides the proper lens through which to view the scope of the statute. See, e.g., Pierre, 372 F. Supp.3d at 22 (the rule of lenity constrains the court to interpret any ambiguity in the statute in movant's favor) (collecting cases); Rose, 379 F. Supp.3d at 229 ("Construing § 404(a) in favor of broader eligibility would also be consistent with the rule of lenity, which is of particular concern here because of the potential unfairness of using offense conduct to exclude defendants from eligibility."). Construing the First Step Act to provide relief based on a change in the penalties of

the charged offense is commensurate with the purpose of the Fair Sentencing Act and "in keeping with the rule of lenity." Allen, supra at *3.

Third, recognizing the ability to grant discretionary relief based on a change in penalties effectuated by the Fair Sentencing Act avoids the difficult constitutional issues that would accompany any attempt to reconcile the use of prior judicial factfinding at sentencing with the constitutional limitations established by Apprendi v. New Jersey, 530 U.S. 466, 476 (2000) (any fact that increases the maximum statutory penalties must be charged in the indictment and proved beyond a reasonable doubt) and Alleyne v. United States, 570 U.S. 99, 103 (2013) (any fact that increases the minimum statutory penalties must be charged in the indictment and proved beyond a reasonable doubt). The government correctly notes that Apprendi and Alleyne have not been given retroactive effect in the context of collateral review. But the current motion is not brought pursuant to 28 U.S.C. § 2255. The statutory grant of authority in the First Step Act provides this court with the discretion to impose a sentence for a covered offense as if the reductions from the Fair Sentencing Act were in place at the time of the offense. Such authority requires a present-day act of imposing a sentence. And in identifying the contours of such an act, it must be assumed that Congress knew and understood the established constitutional principles that would adhere to that undertaking. See Allen, supra, at *4 ("While Alleyne and Apprendi do not provide retroactive relief, Congress legislates in the context provided by constitutional principles.") (citing Rust v. Sullivan, 500 U.S. 173, 191 (1991) ("[W]e assume [that Congress] legislates in light of constitutional limitations."). "Construing section 404 in the context provided by Alleyne and Apprendi, courts should reject a reading of the statute that would preclude eligibility for relief under the First Step Act due to a judicial finding of drug quantity many years ago." Id.; accord Dodd, 372 F. Supp.3d at 797-98 ("Both Apprendi and Alleyne are binding on this Court for sentencings held today. That these procedural rules do not

11

trigger a right to relief retroactively on collateral review, see Walker v. United States, 810 F.3d 568, 574–75 (8th Cir. 2016), is distinct from whether they apply to proceedings independently authorized under the First Step Act."); cf. United States v. Pugh, 2019 WL 1331684, *3 (N.D. Ohio, March 25, 2019) ("Because the jury made no finding as to the specific drug amount, subsequent Supreme Court precedent requires that defendant cannot be responsible for more than 50 grams [for the purpose of determining the statutory minimums and maximums under the Fair Sentencing Act as applied through the First Step Act].") United States v. Biggs, 2019 WL 2120226, *4 (N.D. Ill., May 15, 2019) (recognizing First Step Act proceedings as a form of plenary resentencing subject to the procedural rules now in place). To do otherwise would raise serious constitutional questions about the grant of authority in the statute.

Finally, recognizing the availability of relief under the First Step Act based on a change in the penalties governing the charged offense of conviction avoids the court becoming engaged in undertakings that have the potential to impugn the integrity of the judiciary and generate disrespect for the criminal justice system. Engaging in a hypothetical assessment of how a defendant might have been charged and how a finding of guilt would have come about is fraught with conjecture and reflects an approach that is contrary to the sound administration of justice. Numerous courts have recognized the danger of starting down such a path. See Pierre, 372 F. Supp.3d at 22 (rejecting the government's invitation to "employ a prosecutor-friendly 'way-back' machine to conjure up how" the "charge, conviction and sentence" might have turned out had the Fair Sentencing Act been in place because such an approach would be based on unfounded speculation and contrary to the practical realities of plea-bargaining); Dodd, 372 F. Supp.3d at 799 (rejecting the government's contention that the defendant would have been charged in a manner that would establish the same statutory penalties today as "a speculative claim" and reasoning that "[m]any things might have been different if this crime had been committed and

charged years later or the Fair Sentencing Act had been passed years earlier, and the Court is unwilling to engage in a series of hypotheticals about what might have happened had aspects of the case been fundamentally altered."); Garrett, supra at *3 n. 1 ("In line with other district court decisions addressing this issue, we decline to assume, as the government conjectures, that [the defendant] would have been charged and pleaded guilty or been found guilty at trial of possession with the intent to distribute more than 280 grams of cocaine base. This assertion is simply too speculative.") (collecting cases); cf. Rose, 379 F. Supp.3d at 236 ("While the Government can argue that a change in quantity would not have made a difference at trial, one could also hypothesize that the Government did not proceed to trial on a larger quantity because proving a larger quantity would have been more difficult - which is further illustration that historical revisionism is an inappropriate judicial exercise."). The speculative nature of such an approach becomes even more apparent when consideration is given to the various administrations that have manned the helm of the Department of Justice over the years in question and their concomitant approaches to crime and punishment.

Moreover, the government's efforts to establish that defendant should be deemed to have been charged with possessing with the intent to distribute 28 grams or more of cocaine base under the current version of § 841 exemplify the type of mischief that would ensue with an approach that is founded on actual, relevant conduct. As previously noted, the record contains an ambiguity between the relevant conduct of 6.7 grams of crack listed in the PSIR and the 37.5 grams of crack stated by the prosecutor at the change of plea hearing. The government seeks to bolster the reference in the plea colloquy with a state laboratory report. This report has not been authenticated at any previous hearing where defendant had the right of cross examination. Based on these pieces of information, the government argues that the amount as supported by its version of the case should be accepted as the established facts that set the statutory penalties.

Numerous shortcomings plaque the government's position. Fundamentally, defendant would not have received meaningful appellate review of any dispute concerning the specific amount of crack cocaine referenced in the plea hearing. Defendant was found to be a career offender and sentenced under the guidelines as such. The only drug attribution that constituted an element of the matters under review and would have been subject to appellate scrutiny was whether the quantity of crack defendant possessed with the intent to distribute was 5 grams or more. It was this amount that triggered the applicable statutory maximum to which defendant was subject. It likewise was this amount, then, that triggered the application of the career offender guidelines. Thus, the brute fact of whether the amount of crack attributable to defendant as a result of his offense conduct was 6.7 or 37.5 grams was beyond meaningful review because either amount satisfied the offense of conviction and established the presumptive guidelines range. In other words, he can only be shouldered with having admitted the amount was 5 grams or more. Cf. Mathis v. United States, -- U.S. --, --, 136 S. Ct. 2243, 2248 (2016) ("'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.' * * * At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant, . . .; and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty, . . . . Facts, by contrast, are mere real-world things— extraneous to the crime's legal requirements. * * * They are 'circumstance[s]' or 'event[s]' having no 'legal effect [or] consequence': In particular, they need neither be found by a jury nor admitted by a defendant."); Rose, 379 F. Supp.3d at 229-30 ("To preclude defendants from seeking relief on the basis of facts that may have had little significance at the time they were determined would be draconian and contrary to the remedial purpose of the First Step Act.").

Against this backdrop the government would have us now make a finding of attribution that the amount satisfying today's statutory threshold of 28 grams was 37.5 grams. Of course,

"only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction." Id. (citing Apprendi, 530 U.S. at 490). And "[s]tatements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary." Id. That is exactly the type of fact the government invites us to seize upon here and find controlling as to the statutory minimum and maximum penalties. And it asks us to do so based on a previously unintroduced laboratory report. But if determining that the scope of relief under the First Step Act is controlled by or otherwise contingent on such factfinding, and can be established and satisfied by such evidence, then the level of due process involved surely would call into question the constitutionality of the Act and the integrity of the judicial proceeding itself.

Moreover, the government's approach seeks to effectuate a post-conviction amendment to the indictment. Of course, such matters are governed by the Presentment Clause of the Fifth Amendment to the United States Constitution and "[t]he Supreme Court has long held that it is the exclusive province of the grand jury to amend the substance of its indictment." United States v. Alcorta, 145 F. Supp.3d 357, 360 (M.D. Pa. 2015) (citing Ex Parte Bain, 121 U.S. 1, 9-10 (1887) and Stirone v. United States, 361 U.S. 212, 218 (1960)). At common law an indictment could be amended in any manner. Id. (citing United States v. Fawcett, 115 F.2d 764, 766 (3d Cir. 1940)). Today, the court may amend an indictment as to any defect or imperfection in form, provided the change does not prejudice the defendant. Id. (citing Russell v. United States, 369 U.S. 749, 770 (1962) (It is a "settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form.")). Effectively amending the indictment to reflect the additional quantity of a controlled substance needed to trigger a higher level of statutory penalties strikes us as the very form of prejudice precluded by the Presentment Clause.

Given this state of affairs, it suffices to say that the amount of crack defendant necessarily admitted was attributable to him in the prior proceeding was the charged amount of 5 grams or more. The operative boundaries of that charged offense were not meaningfully altered at the original sentencing proceeding. It is this operative amount that is the focus of the First Step Act. Basing eligibility on factual conduct that is beyond the statute's focus is neither supported by a straightforward reading of the text nor a foray that is free from constitutional difficulties. Consequently, we join the growing consensus of courts and limit our inquiry into the availability of relief under the First Step Act to whether the Fair Sentencing Act has changed the statutory penalties governing the charged offense of conviction.

Defendant is eligible for relief under the First Step Act. He was charged with a covered offense. He committed that offense prior to August 3, 2010, and was sentenced on the covered offense before the amendments by sections 2 and 3 of the Fair Sentencing Act took effect. His sentence has not been reduced in accordance with those amendments. And he has not been denied relief on the merits under the First Step Act.

Turning to the task of exercising our discretion at this juncture, the government's efforts to incorporate the limitations applicable to modifying an existing sentence in a proceeding governed solely by 18 U.S.C. § 3582(c)(2) are misplaced. Caselaw has limited proceedings under section 3582(c)(2) to a modification based on "a sentencing range subsequently lowered by the [United States Sentencing] Commission." Dillon v. United States, 560 U.S. 817, 826 (2010). In such proceedings, the court ascertains whether the Commission subsequently has lowered the defendant's guidelines sentencing range and made that new range retro-active to prior sentences. If so, then the court may impose a reduced sentence within the new range if doing so is consistent with the factors set forth in 18 U.S.C. § 3553(a). Id. All other aspects of the original sentence are left intact under this limited approach. The government seeks to

transfer these limitations into the First Step Act by way of § 3582(c)(1)(B), which permits a court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 . . . . " 18 U.S.C. § 3582(c)(1)(B).

A central component of the Court's analysis in <u>Dillon</u> was the structure and language of the statute, which was deemed to authorize a narrow and limited "sentence-modification" proceeding. In rejecting the contention that § 3583(c)(2) authorized a resentencing in a manner consistent with the Sixth Amendment and the remedial segment of <u>United States v. Booker</u>, 543 U.S. 220, 259 (2005), the Court observed:

> By its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding. Instead, it provides for the "modif[ication of] a term of imprisonment" by giving courts the power to "reduce" an otherwise final sentence in circumstances specified by the Commission. <u>Compare</u> 28 U.S.C. § 994(a)(2)(C) (referring to § 3582(c)(2) as a "sentence modification provisio[n]") with 18 U.S.C. § 3742(f) (authorizing courts of appeals to remand "for further sentencing" upon a finding of error) and § 3742(g) (establishing the terms of "sentencing upon remand" and describing the proceeding as a "resentenc[ing]" (capitalization omitted)). It is also notable that the provision applies only to a limited class of prisoners—namely, those whose sentence was based on a sentencing range subsequently lowered by the Commission. Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding.

<u>Dillon</u>, 560 U.S. at 825-26. The Court further recognized that Congress limited the lower court's power to modify an existing sentence under § 3582(c)(2) by making it contingent on the Commission's decision to both lower a guidelines sentencing range and make the lower range applicable to prior, final sentences. <u>Id.</u> at 826. Read in this light, "§ 3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines."[5] <u>Id.</u>

---

[5] Congress limited the scope of § 3582(c)(2) proceedings through 28 U.S.C. §§ 994(o) and 994(u) – statutory provisions of the Sentencing Reform Act of 1984 which continue to have binding effect notwithstanding the remedial component of <u>Booker</u>. <u>Id.</u> at 829-30.

The discretionary relief authorized under section 404 of the First Step Act is distinctly different. It is not conditioned on a prerequisite action or decision by the United States Sentencing Commission. To the contrary, the First Step Act contains its own independent grant of discretionary authority to the district courts by permitting a "court that imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." This grant "authorizes a reduction in sentence by its own terms" and does not depend on any complimentary authority in § 3582. Dodd, 372 F. Supp.3d at 797 n.2; Boulding, 379 F. Supp.3d at 653 (same).

Moreover, the breadth of the reduced sentence that can be imposed is significantly different as well. Unlike a mere adjustment in an existing sentence consistent with a new guidelines sentencing range, the First Step Act permits the imposing of a reduced sentence within the changes brought about by the Fair Sentencing Act. To the extent they are applicable, these changes lowered the mandatory minimum and maximum sentencing penalties of at least one of the charged offenses forming the defendant's conviction and sentence. For a defendant sentenced on a covered offense and not otherwise precluded from relief, the potential for relief is limited to a new reduced sentence as to custody and supervised release within today's statutory limits. The relief thus is cabined only by the current statutorily mandated minimum and maximum penalties and the need to impose a reduced sentence. See Boulding, 379 F. Supp.3d at 653 ("The limits of 18 U.S.C. § 3582(c)(2) are inapplicable. The only limits found in the First Step Act are the statutory minimums of the Fair Sentencing Act's new thresholds."). The binding sections of 28 U.S.C. §§ 994(o) and (u) do not further limit this range of relief. This difference in the limitations on the relief available under the First Step Act is distinct from those that attach to a re-sentencing undertaken pursuant to § 3582(c)(2). See Rose, 379 F. Supp.3d at 232-33

(The broader grant of authority in § 404(b) is not constrained by the limitations that govern sentencing modifications pursuant to § 3582.).

Interpreting the First Step Act in such a fashion is grounded in common sense. As Chief Judge Smith observed: "relief under the Act is ultimately within the discretion of the Court; there is no automatic reduction. It makes sense that Congress intended to give a certain class of defendants -- those who were sentenced under a statute for which the penalties changed in 2010 -- a do-over." Pierre, 372 F. Supp.3d at 22-23. In other words, "the more sensible interpretation of the statute favors erring on the side of allowing the sentencing court to determine whether a specific defendant is entitled to relief given several factors, including the underlying drug quantity." Id. at 23.

Construction of the First Step Act as outlined above also permits the court to engage in its traditional role of factfinding in relation to the imposition of a sentence within the prescribed limits. It is well settled that "'judges in this country have long exercised discretion of this nature in imposing sentence within [established] limits in the individual case,' and the exercise of such discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts." Dillon, 560 U.S. at 829-30 (quoting Apprendi, 530 U.S. at 481).

It also permits the consideration of the brute facts and information that traditionally have a bearing on the sound exercise of the court's sentencing discretion. Among other factors, a court deciding whether to impose a reduced sentence under section 404 should evaluate all such information pursuant to the "lodestone" of sentencing factors set forth in 18 U.S.C. § 3553(a), any changes to the applicable guideline range, post-sentencing conduct bearing on rehabilitation and so forth. See Garrett, supra, at 3 ("In deciding whether to reduce a sentence under § 404, the court 'look[s] at the factors set out in [18 U.S.C.] Section 3553(a), the revised statutory range under the Fair Sentencing Act, any amendments to the guideline range, and post-sentencing

conduct.'") (quoting United States v. Bean, 2019 WL 2537435, at *4 (W.D. Mich. June 20, 2019) and (citing United States v. Jones, No. 2:05-CR-29-FL-1, 2019 WL 2480113, at *2 (E.D. N.C. June 11, 2019)); accord Biggs, supra at *4 (taking into account the current guideline range, which remained unchanged, as well as nature and circumstances of the underlying relevant conduct, the time already served and its likely impact on the defendant's propensity for recidivism, and the defendant's post-incarceration rehabilitative conduct in granting a reduced sentence); Dodd, 372 F.Supp.3d at 799-800 (assessing the defendant's offense conduct, a "particularly harsh quirk" utilized in formulating the defendant's prior guideline range, the new guideline range, and the defendant's current age as it relates to the likelihood of recidivism in formulating a reduced sentence that complies with "the purposes set forth in 18 U.S.C. § 3553(a)"); Rose, 379 F. Supp.3d at 234-35 (consideration of the applicable § 3553(a) factors provides the "familiar framework to guide the exercise of discretion conferred by the First Step Act" along with any positive or negative post-sentencing factual information bearing on the defendant's history and characteristics). It also is appropriate to consider the changes in sentencing policy that have evolved over the years and "Congress's judgment that shorter prison sentences adequately reflect the seriousness of crack cocaine offenses." Garrett, supra at * 3; accord Biggs, supra at *4; cf. Dodd, 372 F. Supp.3d at 799 ("The First Step Act was passed by Congress, and signed by the President, in an effort to remedy the disproportionately harsh sentences imposed for crack cocaine offenses.").

Here, defendant's statutory penalties and his applicable guideline range have changed. At his original sentencing hearing defendant was subject to a minimum of 5 and a maximum of 40 years of imprisonment and at least 4 years of supervised release; consistent with one of the significant changed sentencing policies, the charged offense of conviction now results in only a 20 year maximum penalty of incarceration and at least 3 years of supervised release. Defendant's

guidelines range has been lowered as well. His original career offender designation resulted in an adjusted base offense level of 32; the same designation today results in an adjusted base offense level of 30, thereby reducing the range from 210 to 262 months to 168 to 210 months.[6]

Several other aspects of the record support the court imposing a reduced sentence. Defendant received a sentence at the low end of the guidelines range in 2006; he seeks a sentence that effectively is the equivalent under today's sentencing policies: a sentence at or near 168 months. He was young at the time he committed the predicate offenses. He received only one sentence of incarceration on his predicate offenses. He has served approximately 14 years on the current offense. He now has reached an age where the statistics on recidivism show that the likelihood of recidivism is likely to have meaningfully declined. And his post-sentencing conduct while incarcerated bodes well for his successful reintegration.

Consistent with the discretionary authority under the First Step Act, defendant's motion seeking a reduced sentence will be granted. Defendant's sentence will be reduced to time served plus a reasonable number of days to process defendant's release and 3 years of supervised

---

[6] A number of courts have held that the First Step Act permits a reduced sentence even though the defendant's guidelines range has not changed. See e.g. Garrett, supra at *3 (awarding relief notwithstanding no change in guidelines range and a presidential commutation of the original sentence below that guidelines range of 360 months to life); Biggs, supra at * 3-4 (same).

release.[7]  An appropriate order will follow.

Date: August 27, 2019

                                        s/David Steward Cercone
                                        David Stewart Cercone
                                        Senior United States District Judge


cc:     Christian A. Trabold, AUSA
        Adam Hallowell, AUSA
        Samantha Stern, AFPD

        (*Via CM/ECF Electronic Mail*)

---

[7]  The court is confident from its prior experience that the Bureau of Prisons promptly can transfer defendant to the custody of Pennsylvania Department of Corrections pursuant to the lodged detainer without meaningful delay, which in turn obviates the need for additional time as advocated by the government.